IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MOORE EYE CARE, P.C.** | **CIVIL ACTION** |
| v. | NO. 20-5943 |
| **KAKARLA V. CHALAM, M.D.** | |

**MEMORANDUM RE: MOTION TO COMPEL AND
MOTION FOR PROTECTIVE ORDER**

**Baylson, J.**                                                                                         **December 15, 2021**

Plaintiff Moore Eye Care, P.C.'s Motion to Compel (ECF 20) and Defendant Kakarla V. Chalam, M.D.'s Motion for Protective Order (ECF 22) concern the same records. Plaintiff seeks to compel the production from Defendant of documents and communications with his attorneys and also relating to Defendant's privileges to practice medicine at a Florida hospital. Defendant moves for a protective order covering these documents and communications.

**I.     Background**

Plaintiff sued Defendant alleging breach of an employment agreement ("EA") between him and Plaintiff that was signed in 2016. Under the terms of the EA, Chalam agreed to provide Moore Eye Care with a written explanation of his suspension and resignation ("Written Explanation") from UF Health Jacksonville/Shands Jacksonville Medical Center ("Shands") in April 2016. (Am. Compl. ¶ 37.) Chalam provided the Written Explanation (id. ¶ 46), which was prepared by Chalam's former counsel in Florida, Christine Whitney. (MtC ¶ 4.)

Plaintiff alleges that the Written Explanation was materially false and incomplete. (Am. Compl. ¶ 47.) This alleged failure to provide a full and accurate Written Explanation is one of the several alleged contractual breaches. (Id. ¶ 139.) Plaintiff therefore requested production of, in connection with Chalam's practice of medicine at Shands, all documents referring or relating to

1

Chalam's suspension or surrender of practice privileges and any other investigation referring to Chalam's competence or conduct. (MtC ¶ 9.) Defendant responded that he had already turned over all documents responsive to this request. (Id. ¶ 9.) Plaintiff also served subpoenas on Whitney and other attorneys with essentially the same production request. (Id. ¶ 10).

Upon receiving the subpoena, Whitney invoked attorney-client privilege and the attorney work product doctrine and stated in August 2021 that she would prepare a privilege log. (Id. ¶ 14.) In October 2021, with no privilege log yet prepared, Defendant's current counsel informed Plaintiff that he had taken custody of the records previously in Whitney's possession ("Whitney Records") and would himself prepare a privilege log. (Id. ¶ 19.) Defense counsel has since provided Plaintiff with a privilege log but has also moved for a protective order for the documents, asserting that they have no value to Plaintiff's case and that the discovery is not "proportional." (Id. ¶ 21.) Plaintiff now seeks to compel the production of the Whitney Records, while Defendant seeks to protect them.

Extensive disputes concerning discovery have arisen in this case, and after voluminous briefing by both Plaintiff and Defendant, the Court submitted several questions to counsel in advance of a hearing which took place on December 10, 2021. Basically, Plaintiff seeks to expand discovery into many alleged omissions and misstatements that were made by the defendant in disciplinary/regulatory hearings held in Florida.

By way of background, the Amended Complaint, which is 46 pages and contains 139 separate paragraphs, is not a model for the type of pleading envisioned by Rule 8 of the Federal Rules of Civil Procedure, that a complaint should be "a short and plain statement of the claim." The complexity of the Complaint has been accompanied by very broad discovery demands by

Plaintiff, who seeks detailed information concerning disciplinary proceedings against, and investigations about, Defendant both prior to and after the execution of the EA.

As disclosed in the Amended Complaint, Plaintiff was well aware that there had been regulatory proceedings against or concerning Defendant in Florida, and Defendant had disclosed at least some of these proceedings to the Plaintiff in the Written Explanation. (Am. Compl. ¶ 46.) Basically, Plaintiff contends that Defendant did not make a full disclosure of the extent of the professional/disciplinary proceedings against Defendant in the Written Explanation and thus breaches the EA.

There has been extensive discovery between the parties to date. The discovery disputes now primarily concern Plaintiff attempting to secure documents, which Defendant asserts are protected by attorney-client privilege or peer review privilege, and attorney work product from Defendant and the parties. Prior to the oral argument on December 10, the Court submitted questions to counsel concerning different categories of materials that might be in possession of Defendant and/or his former or current attorneys into five categories as follows:

1. Has Whitney produced all documents that she was holding as a "custodian" for Dr. Chalam, and which he had given to her? If not, why not?

2. Has Whitney put on a privilege log (see F.R.C.P. Rule 26 (b)(5)) all of the documents in which she communicated with Dr. Chalam that are reflected in writing, such as emails? Do these all constitute attorney/client communications regarding legal advice? If not, why not?

3. What documents does Whitney have that she would characterize as "work product" that she prepared in connection with representing Dr. Chalam? If any, what are your contentions?

4. To the extent that Whitney and Chalam had verbal conversations, is there any issue that all of them would be privileged as attorney/client communications and not subject to discovery?

> 5. Are documents which Whitney has subject to the "peer review privilege" under Florida law?  If not, why not?

Another important fact in this case is the fact Defendant actually worked for Plaintiff for a very short period of time—about one week in November 2017. (Am. Compl. ¶ 98–101.) Plaintiff asserts that prior to Defendant starting to work for Plaintiff, Defendant was secretly negotiating to join another ophthalmology practice in California, where Defendant is now practicing medicine. (Id.)  Whether and to what extent this successive employment of Defendant in California would warrant any damages in favor of Plaintiff is possibly a matter of contention in this case but is not sufficient to warrant the type of discovery that Plaintiff is seeking.

## II. Parties' Contentions

Plaintiff contends that discovery from other sources in this case suggest that the Written Explanation was materially false and incomplete and that the Whitney Records relate to the preparation of the Written Explanation and are therefore relevant to this issue. (MtC ¶ 22–23.) In its Response to Defendant's Motion for Protective Order, Plaintiff also ties the relevance of the Whitney Records to the defense raised in Defendant's Amended Answer (ECF 17) that certain conditions precedent set forth in the EA regarding staff privileges and insurance credentials were never met and therefore the EA never took effect (Am. Answer 21).  Plaintiff argues that the Whitney Records will show that any unsatisfied conditions were deliberately frustrated by Defendant. (MfPO Resp. 43.)

In his Motion for Protective Order, Defendant argues:

1. The Whitney Records are irrelevant because the EA provided that if Chalam's Written Explanation were to be inaccurate, Moore Eye Care's only remedy was to cancel the EA immediately. (MfPO 2–3.)

2. The term of the EA elapsed on July 31, 2021—rendering moot the possibility of cancellation—the Whitney Records and the Written Explanation to which they pertain are irrelevant to Plaintiff's suit. (Id. at 3.)

4

> 3. These records are highly embarrassing, prejudicial, and protected by peer review privilege, attorney-client privilege, and attorney work-product doctrine to a significant extent. (Id. at 4.)

### III. Summary of Oral Argument

The hearing on December 10, 2021 was largely devoted to ascertaining from counsel for Plaintiff and Defendant more precisely what discovery has not yet taken place and then to explore the various assertions of privilege by Defendant. The Court reviewed the questions that had been posed in the letter to counsel dated December 7, 2021, and the transcript will disclose the entire colloquy. This section of this Memorandum is only intended as a summary of the discussions and rulings made on the record, which shall be followed by counsel even if not specifically stated in this Memorandum or the Order.

Defense counsel represented that all the documents in Defendant's possession, custody, or control which did not involve any assertions of privilege or protection have been produced in this case. This representation appears to be accepted by Plaintiff's counsel. However, based on the colloquy, the Court will require defense counsel to once again review his records, consult with Whitney, and advise Plaintiff's counsel in writing if the representation on the record was correct and, if not, what further documents will be produced. Any attorney representing a party in this case who has received relevant non-privileged or protected documents from Defendant, as to which there is no claim of privilege, such as attorney-client communication or peer review proceedings, must produce the documents.

The Court briefly examined in the courtroom the two privilege logs that have been prepared by defense counsel and served on Plaintiff. Mention was made by Plaintiff's counsel of a few examples in which there appeared to be documents from third parties as to which a privilege or protection may not apply. The Court is not ruling on any of these entries at this time but will

require counsel to have further discussions.  Defense counsel shall explain, as to any third-party communications, what privilege is being claimed and the underlying facts.  The Court indicated that it was not about to review some 600 pages of emails and other documents and is inclined to respect the entries on the privilege log as accurate in the absence of some showing by Plaintiff that certain specific entries are inaccurate.

## IV. Discussion

### a. Probative Value of the Whitney Records

Defendant is correct that the terms of the EA provide Moore Eye Care with the right to immediately terminate Chalam's employment if he made untrue representations.  (Am. Compl., Ex. A, art. 4.1.)  But the terms of the contract do not state that this is the sole remedy available to Plaintiff, as Defendant contends (MfPO Br. 7–8).  Defendant also errs in characterizing Plaintiff's action as solely about whether Chalam failed to commence working for Moore Eye Care (id. at 7). This failure to commence work is indeed one of the alleged breaches underlying this action—but only one.  Though placed under a single Count in the Complaint, Plaintiff has alleged several other distinct grounds for its breach of contract claim.  (Am. Compl. ¶¶ 131–39.)  Finally, Defendant does not cite any authority for his assertion that, because the term of the contract has recently elapsed, Plaintiff is barred from seeking relief for the alleged breach related to the Written Explanation.

However, the probative value of the Whitney Records is nonetheless very limited. According to Plaintiff's Complaint, Moore Eye Care accepted Chalam's Written Explanation at the time it was offered without any suggestion that it was necessary to review further records. (Am. Compl. ¶¶ 46–49.)  To explain its new suspicions of the accuracy of the Written Explanation, Plaintiff cites two administrative complaints against Chalam that were filed by the Florida

Department of Health in 2017. (MtC ¶ 6 n.1.) Both administrative complaints allege that Chalam committed medical malpractice during treatment periods that overlap with his time practicing at Shands. (Id., Ex. 14.) However, both cases settled without any finding of wrongdoing by Chalam, and Plaintiff provides no additional basis for its allegation that the conduct at issue in these administrative complaints had anything to do with Chalam's suspension and resignation from Shands. Weighing against the limited probative value of the Whitney Records is the virtually certain embarrassment and prejudice that they will cause Defendant; any reasonable professional would be embarrassed by the airing of detailed records of a suspension and resignation from a previous position, even if events occurred exactly as the Written Explanation described.

Plaintiff's detailed advocacy of securing any record of any other "investigation" or "complaint" that had been made regarding Defendant is entirely out of bounds for discovery in this case. The record of the case does not show that Defendant was expected to make sure disclosures or that it was in the contemplation of the parties that the EA required such disclosures.

### b. Privileges and Protections

This Memorandum will not repeat the extensive discussion that took place on the record concerning each party's reliance on certain statutes discussed in the briefs. Rather, the Court's ruling is intended to encompass all peer review proceedings, attorney-client privileged communications, and attorney work product in this case. The Court adds that these rulings are confined to discovery and do not necessarily apply to proceedings on summary judgment and trial.

The Court concludes that a deposition of present or prior defense counsel is not appropriate or necessary in this case in view of the rulings being made and the requirements being placed on current defense counsel to reexamine and, in particular, review the privilege log to be sure that assertions of privilege are limited as ordered by the Court.

### i. Choice of Law

Plaintiff argues that Pennsylvania, rather than Florida, privilege law should apply to the Whitney Records. However, the records concern events that took place in Florida at a Florida hospital, and Third Circuit precedent supports applying Florida privilege law. See Samuelson v. Susen, 576 F.2d 546, 551 (3d Cir. 1978) (finding that under Pennsylvania's conflict-of-laws rules, Ohio's peer review privilege law should apply to medical review committee proceedings held in Ohio that involved Ohioans making decisions regarding the use of Ohio medical facilities). Though Plaintiff emphasizes that Florida's peer review privilege does allow for production of privileged documents upon a "showing of 'exceptional necessity' or of 'extraordinary circumstances,'" Liberty Mut. Ins. Co. v. Wolfson, 773 So. 2d 1272, 1274 (Fla. Dist. Ct. App. 2000), the Court finds that Plaintiff has not made this showing. The Court concludes that Florida privilege law applies to the Whitney Records.

### ii. Peer Review Privilege

Florida's three peer review privilege statutes—§ 395.0191(8), § 395.0193(8), and § 766.101(5)—provide "that the investigations, proceedings, and records of a peer review committee are not subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of matters that are the subject of evaluation and review." Brandon Reg'l Hosp. v. Murray, 957 So. 2d 590, 591 (Fla. 2007). This case does not directly arise out of the issues underlying Chalam's peer review proceedings; Chalam is not being sued for whatever conduct resulted in his suspension and resignation from Shands. The substance of those proceedings and how that compares to what was reported in the Written Explanation, however, is at the heart of Plaintiff's breach claim on this point.

8

In actions in which the substance of peer review proceedings—not just the matter underlying the proceedings—is at central issue, the Florida Supreme Court has found peer review privilege to apply.  See Holly v. Auld, 450 So. 2d 217, 220 (Fla. 1984) (holding that in a defamation action, the peer review privilege statutes protected from disclosure allegedly defamatory statements made during peer review proceedings).  The Florida Supreme Court's "interpretation of the history of these statues . . . has been to err on the side of protecting the confidentiality of the peer review process," and privileged material "include[s] not only documents or records produced by a peer review committee, but also documents considered by the committee as part of its decision-making process."  Brandon Reg'l Hosp., 957 So. 2d at 592.  The statutes are "designed to provide that degree of confidentiality necessary for the full, frank medical peer evaluation," even when such a discovery privilege will impinge upon the rights of some civil litigants to discovery of information which might be helpful, or even essential, to their cause."  Holly, 450 So. at 220.

The Court noted on the record the importance of each state to set its own disciplinary and regulatory oversight of physicians and other healthcare professionals without turning the documents collected in these statewide regulatory proceedings into a "toolkit" for private litigation.  What Plaintiff requests is not only inappropriate but would cause great expense to the responding parties, including third parties such as hospitals and other regulatory boards, and yield very little, if any, facts for Plaintiff.  Some such complaints are speculative, retaliatory, or simply untrue.  The struggle and expense to go through this type of material is not appropriate for discovery in this particular case, particularly considering the disclosures which Defendant has already made.

The Court notes that Plaintiff has secured certain documents from public sources, which is its right to pursue. The fact that these documents may refer to peer review proceedings does not

9

make them privileged because if they are obtainable from an independent source, on the internet or otherwise, there is no privilege protection.

### iii. Attorney-Client Privilege and Attorney Work Product Protection

Because the Whitney Records contain many communications and documents related to Whitney's representation of Chalam, attorney-client privilege and attorney work product protection are very relevant. The Court reminds both counsel that the attorney-client privilege applies to communications and not to facts. Therefore, Defendant must reveal all relevant facts, and the fact that he communicated these facts to an attorney does not make these facts privileged.

Plaintiff asserts that Defendant has waived attorney-client privilege by putting the advice of counsel at issue. (MfPO Resp. 48–49.) See Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994) ("Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice."). But to place the advice of counsel at issue, the client must "assert[] a claim or defense, and attempt[] to prove that claim or defense by disclosing or describing an attorney client communication." Id. Defendant has not done that.

Plaintiff similarly argues that Defendant has waived attorney work product protection by putting the work product directly at issue. See In re Sunrise Sec. Litig., 130 F.R.D. 560, 566 (E.D. Pa. 1989) (O'Neill, J.) ("Courts have recognized an exception to the work product doctrine in cases where an attorney's 'mental impressions and opinions are directly at issue.'" (citation omitted)). Whitney's mental impressions and opinions are not, however, directly at issue in this case. The Court, on the existing record, has no reason to doubt these documents are protected from discovery in this case.

Plaintiff also asserts that the crime-fraud exception applies to the Whitney Records. (MfPO Resp. 50.) However, Plaintiff has not established any specific crime or fraudulent activity that could warrant this exception.

To the extent that Defendant has waived any privilege, the Court only finds that Defendant has waived any right to object to any discovery as to whether his privileges were "denied, revoked, suspended, or restricted by any hospital or any healthcare facility." (See Am. Compl. ¶ 46.) This "waiver" only applies to Defendant's obligations to provide relevant non-privileged documents in his present custody or control, but it does not open the door to discovery into peer review privilege matters or attorney-client communications. After the extensive argument and briefing regarding the present motions, the Court determines that this particular characterization is an appropriate boundary as to the limitations on discovery in this case. Since Defendant specifically agreed to make representations of these specific topics, the Court rules that he must make full compliance with any and all such actions that may have occurred during any time in his career.

## V.     Conclusion

Following the hearing, the Court has concluded that at the present time, Defendant has made a reasonably thorough production of relevant documents and Plaintiff has not shown that Defendant has waived any of his privileges. The Court has also concluded, based on the briefs and the hearing, that the type of extensive discovery that Plaintiff is now seeking is not proportional to the needs of the case and not proportional to the damages which Plaintiff can reasonably expect to be awarded if a jury finds Defendant liable for breach of contract.

If Plaintiff does prevail on liability, there is a possibility that Defendant could be required to produce information as to the damages, but the Court will not require that at this time. It is

possible that the Court will bifurcate liability from damages if Plaintiff can show that it has a legal right to damages above and beyond the liquidated damages.

For the foregoing reasons, the Court will grant in part and deny in part both Plaintiff's Motion to Compel and Defendant's Motion for Protective Order subject to the qualifications detailed in this Memorandum.  An appropriate Order follows.

O:\CIVIL 20\20-5943 Moore Eye Care v Chalam\20cv5943 Memorandum re Motion to Compel and Motion for Protective Order.docx