IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MOORE EYE CARE, P.C. | CIVIL ACTION |
| v. | NO. 20-5943 |
| KAKARLA V. CHALAM, M.D. | |

MEMORANDUM RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                 June 29, 2022

Defendant Kakarla V. Chalam, M.D., and Plaintiff Moore Eye Care, P.C. both move for summary judgment in this case arising from an alleged employment relationship between the parties that has resulted in this litigation. After extensive discovery, Chalam has filed a Motion for Summary Judgment (ECF 71), and Moore Eye Care has filed a Motion for Partial Summary Judgment (ECF 73). For the reasons that follow, the Court will deny both Motions.

I.      Factual Background

Considering the undisputed facts, and noting factual disputes where relevant, the events giving rise to this case are as follows. Defendant Kakarla V. Chalam, M.D., is an ophthalmologist. Plaintiff Moore Eye Care, P.C., is an ophthalmology practice in Pennsylvania owned by Dr. Leonard Ginsburg. On November 8, 2016, Chalam signed an exclusive employment agreement ("Moore Agreement") with Moore Eye Care. (Moore MSJ, Statement of Material Facts ¶ 1.) Though Moore Eye Care states that the Moore Agreement was executed (id.), Chalam denies that the Moore Agreement was countersigned by Moore Eye Care. (Moore MSJ Resp., SMF ¶¶ 1–13.)

According to Moore Eye Care, Chalam then signed an exclusive employment agreement with Loma Linda University Medical Center ("First LLU Agreement"), which is located in California, on November 16, 2016. Chalam did not disclose to either employer/entity that he had signed a competing contract with a different employer/entity. (Moore MSJ, SMF ¶¶ 14–24.)

1

Chalam denies that the First LLU Agreement was a competing contract and states that Chalam does not recall if he signed it. (Moore MSJ Resp., SMF ¶¶ 14–22.)

The Moore Agreement provided that Chalam would commence employment at Moore Eye Care as close to February 1, 2017, as possible. (Moore MSJ, SMF ¶ 8.) Moore Eye Care states that the First LLU Agreement similarly provided that Chalam would commence employment on February 1, 2017.[1]

As part of both the Moore Agreement and the First LLU Agreement, Chalam was required to go through a credentialing process, obtaining relevant licenses and hospital staff privileges. Due to delays in each credentialing process, Chalam's proposed start dates at LLU and Moore Eye Care were continually pushed back. (Id. ¶¶ 27–36.)

On or about September 1, 2017, Chalam signed a new employment agreement with LLU ("Second LLU Agreement"). Per the Second LLU Agreement, Chalam began his employment with LLU on September 1, 2017. (Id. ¶¶ 43–46.)

Chalam did not inform Moore Eye Care that he had begun employment with LLU. Indicating to Moore Eye Care that he still intended to work there, he continued proceeding through the credentialing process in Pennsylvania. Chalam communicated to Ginsburg that he planned to begin his employment with Moore Eye Care on January 1, 2018. (Id. ¶¶ 47–53.) In November 2017, Chalam visited Moore Eye Care and treated numerous patients over a week-long period. (Id. ¶¶ 61–64.) The parties dispute whether Chalam's visit to Moore Eye Care constituted the commencement of his employment under the Moore Agreement. Moore Eye Care contends that it did (id.), which Chalam denies (Moore MSJ Resp., SMF ¶¶ 61–64).

---

[1] In responding to Plaintiff's Statement of Material Facts, Defendant purports to deny this, stating that "[t]he so-called First LLU Agreement is in writing and the document speaks for itself." (Moore MSJ Resp., SMF ¶¶ 21.) However, as Plaintiff directly quotes the First LLU Agreement in stating this starting date, there does not appear to be any genuine dispute on this point.

Following Chalam's visit to Moore Eye Care, Ginsburg—who had become aware that Chalam had some type of relationship with LLU—wrote Dr. Michael Rauser of LLU to clarify Chalam's status. Rauser, who had worked with Chalam in negotiating the LLU contracts, informed Ginsburg that he had been unaware of Chalam's involvement with Moore Eye Care and confirmed that Chalam was employed by LLU. (Moore MSJ, SMF ¶¶ 65–69.) Chalam and Ginsburg exchanged emails about Chalam's relationship with LLU and his obligations to Moore Eye Care. (Moore MSJ Resp., Exs. Y, Z, AA.) The exchange effectively ended the contemplated employment relationship between the parties, and Chalam never returned to Moore Eye Care. (Moore MSJ, SMF ¶ 71.)

## II.   Procedural History

Several years after the events at the heart of this case, Moore Eye Care filed this suit against Chalam in this Court (ECF 1). Moore Eye Care alleges that Chalam breached the Moore Agreement, triggering the contract's liquidated damages provision in doing so.

Although Moore Eye Care's Complaint contains only a single count for breach of contract, the Complaint alleges several distinct ways in which Chalam allegedly breached the contract. The breach of contract claim might be divided into the following "sub-claims":

1. Breach by failing to make required disclosures;
2. Breach by entering into a separate employment agreement with LLU;
3. Breach by violating the EA's confidentiality and nondisclosure provision; and
4. Breach by violating the EA's best-efforts provision.

Following a complex discovery process, both parties have moved for summary judgment. Moore Eye Care seeks partial summary judgment, asking that the Court find Chalam liable for liquidated damages in the amount of $600,000. Chalam seeks a full grant of summary judgment

in his favor. Moore Eye Care (ECF 94) and Chalam (ECF 81) filed Responses in opposition to the opposing party's Motion. Moore Eye Care also filed a Reply (ECF 90) in support of its own Motion.

### III. Legal Standard

Summary judgment should be granted if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a factual dispute "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. Granting summary judgment is appropriate only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). These rules are "no different where there are cross-motions." Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008).

In deciding a motion for summary judgment, courts "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015). The moving party must identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's burden at the summary judgment stage can be met by showing the court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to evidence such as affidavits,

4

depositions, or discovery documents—that demonstrate the existence of a genuine triable dispute. Fed. R. Civ. P. 56(c).

IV. Discussion

    a. **Chalam's Motion**

        i. **Statute of Limitations**

Under Pennsylvania law, a breach of contract claim has a four-year statute of limitations. 42 Pa. C.S. §5525. Chalam raises as a threshold argument that the statute of limitations for Moore Eye Care's breach of contract claim has passed. Chalam states that Moore Eye Care accepted the signed Moore Agreement on November 9, 2016, and did not file its suit until more than four years later on November 26, 2020. Therefore, submits Chalam, Moore Eye Care's claim is barred. (Chalam MSJ Br. 19.) Moore Eye Care counters that the statute of limitations should be measured not from the date that Moore Eye Care accepted the Moore Agreement, but rather from the point in 2017 that Moore Eye Care learned of Chalam's alleged breach. (Chalam MSJ Resp. Br. 24.)

The Court rejects Chalam's argument. "[I]t is well-settled that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." Morgan v. Petroleum Prod. Equip. Co., 92 A.3d 823, 828 (Pa. Super. Ct. 2014). However, there are "exceptions to this general rule which act to toll the running of the statute," and "[o]ne of these exceptions is the discovery rule." Id. The discovery rule "tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." Id. It is undisputed that Moore Eye Care learned of the alleged breach in 2017, and Chalam does not argue that Moore Eye Care should reasonably have known of the alleged breach at an earlier date.

5

The Court concludes that Chalam is not entitled to summary judgment on his statute of limitations defense.

### ii. Representations Regarding Florida

Section 1.2 of the Moore Agreement contained a representations and warranties provision requiring Chalam to affirm that he had "never been forced to resign from any hospital . . . as a result of quality of care" or "resigned therefrom under threat of discipline or termination." (Chalam MSJ, Ex. B, §§ 1.2.4–1.2.5.)  The provision also required Chalam to affirm that he had "never had his license to practice in a state suspended, restricted or revoked." (Id. § 1.2.2.)  The provision further required Chalam to notify Moore Eye Care "in the event that any of the foregoing representations, covenants or warranties become untrue at any time during the term hereof, or if there exists a circumstances that with notice and/or the passage of time could result in such representation, covenant or warranty becoming untrue." (Id. § 1.2.)  Finally, Section 1.2 provided that, notwithstanding these requirements, Chalam had informed Moore Eye Care that he had "resigned his position at the University of Florida and such resignation will not be a breach of the provision of this Section 1.2, so long as Physician has made complete disclosures to Corporation regarding the circumstances of such resignation." (Id.)

The central point of controversy involving this provision concerns whether Chalam accurately represented events at the University of Florida Health Jacksonville, previously the Shands Jacksonville Medical Center, where he was previously employed.  It is undisputed that at the time he signed the Moore Agreement in 2016, Chalam was being investigated by the Florida Department of Health regarding his care of two patients at UF Health.  Chalam did not inform Moore Eye Care about the existence of this investigation.  (Chalam MSJ Br. 11–12.)  Moore Eye

Care contends that there are two ways in which Chalam violated the representations and warranties provision.

### 1. Medical License

Moore Eye Care first asserts that the Florida investigation was a circumstance that, with the passage of time, could have led to Chalam's Florida medical license being suspended, restricted, or revoked. By failing to disclose this information to Moore Eye Care, argues Moore Eye Care, Chalam violated the terms of the Moore Agreement. (Chalam MSJ Resp. Br. 14–15.) Chalam concedes that "[t]here is certainly a question as to whether a reasonable physician reading this Employment Agreement provision would forecast that an investigation could with the 'passage of time' result in the doctor's license being 'suspended, restricted or revoked,' and therefore require disclosure." (Chalam MSJ Br. 11–12.) But Chalam submits that the Moore Agreement's "term hereof" had not yet commenced—and ultimately never commenced—and he was under no obligation to make any disclosures about the investigation prior to that point. (Id. at 12.)

Chalam contends that he is entitled to summary judgment on the question of whether he complied with the required disclosures in the Moore Agreement. (Chalam MSJ Br. 10–12.) However, the Court finds that there is a material dispute of fact as to this issue. Moore Eye Care has produced documents related to the Florida investigation that could allow a reasonable jury to find that the investigation constituted a circumstance that, with the passage of time, could have resulted in Chalam's representation that his license had never been suspended, restricted, or revoked becoming untrue. (See Chalam MSJ Resp., Exs. 22, 30.) A reasonable jury might then find that Chalam was required to disclose the investigation under the Moore Agreement.

The Court is also not persuaded by Chalam's statutory interpretation argument. Whatever the significance of the provision's use of "term hereof," the Moore Agreement does not apply that potentially limiting language to the provision's requirement that "Physician shall immediately notify Corporation . . . if there exists a circumstance that with notice and/or the passage of time could result in such representation, covenant or warranty becoming untrue."

### 2.  Resignation from UF Health

Moore Eye Care next contends that Chalam failed to make a "complete disclosure" regarding the circumstances of his suspension and subsequent resignation from UF Health. Chalam provided Moore Eye Care with a written explanation addressing this matter, which Moore Eye Care accepted at the time, when the Moore Agreement was signed in 2016. The written explanation indicated that Chalam's suspension and resignation resulted from disagreements over the use of imaging studies. (Chalam MSJ Resp., Ex. 39.) Moore Eye Care argues, however, that the Florida investigation was the true cause of Chalam's suspension and resignation, and that Chalam concealed this. (Chalam MSJ Resp. Br. 16–17.)

The circumstances of Chalam's suspension and resignation from UF Health, and the accuracy of his written explanation, were a source of significant dispute during discovery. At that time, this Court found that Moore Eye Care had provided little basis from which to conclude "that the conduct at issue in [the investigation] had anything to do with Chalam's suspension and resignation from" UF Health. Moore Eye Care, P.C. v. Chalam, No. CV 20-5943, 2021 WL 5925946, at *4 (E.D. Pa. Dec. 15, 2021) (Baylson, J.). Moore Eye Care has now produced documents suggesting a relationship between the Florida investigation and Chalam's suspension and resignation. (Chalam MSJ Resp., Ex. 17.) This provides a sufficient basis for a reasonable jury to find in Moore Eye Care's favor on this issue, making summary judgment inappropriate.

### iii. Loma Linda University Agreement

In addition to the representations related to Chalam's past employment, Section 1.2 of the Moore Agreement required Chalam to affirm that there were no "restrictions, agreements or understandings" that would prevent Chalam from executing the Moore Agreement or working at Moore Eye Care; that the execution of the Moore Agreement would "not constitute a breach of any contract, agreement or understanding, oral or written" to which Chalam was bound; and that Chalam was "free and able" to execute the Moore Agreement and be employed by Moore Eye Care. (Chalam MSJ, Ex. B, §§ 1.2.8–1.2.10.) As with the representations related to past employment, the Moore Agreement required Chalam to "immediately notify" Moore Eye Care "in the event that any of the foregoing representations, covenants or warranties become untrue at any time during the term hereof, or if there exists a circumstance that with notice and/or the passage of time could result in such representation, covenant or warranty becoming untrue." (Id. § 1.2.)

Moore Eye Care contends that Chalam violated his obligations under Section 1.2 when, after signing the Moore Agreement, he signed a separate employment contract with LLU. (Chalam MSJ Resp. Br. 18–20.) Chalam responds that, in signing the LLU Agreement, he was merely providing himself with an alternative source of employment should the Moore Agreement's conditions precedent fail to be satisfied. Signing the LLU Agreement did not breach the Moore Agreement, Chalam posits, because he still intended to adhere to the Moore Agreement if all conditions precedent were met. Were all conditions met, Chalam would have commenced his employment with Moore Eye Care. Doing so would not have breached the LLU Agreement because, Chalam reasons, the LLU Agreement allowed for termination with a certain amount of notice. Had the conditions precedent to the Moore Agreement all been met, Chalam asserts that

9

he would have properly terminated the LLU Agreement, freeing him up to work at Moore Eye Care and avoiding breach of either employment contract. (Chalam MSJ Br. 13–14.)

Chalam presents a "curious" argument: that the Moore Agreement technically did not require him to disclose that he had signed a separate, apparently incompatible employment contract because he genuinely intended to extricate himself from that separate employment contract and fulfill his obligations under the Moore Agreement.[2] Chalam is certainly not entitled to summary judgment on this issue, which requires a particularly favorable interpretation of his actions that a reasonable jury may well reject; Moore Eye Care points, for example, to deposition testimony that Chalam expressly assured LLU in November 2017 that he had "no intention" of working for Moore Eye Care. (Moore MSJ, Ex. 5, Rauser Dep. 79.)

### iv. Confidentiality and Nondisclosure Provision

The Moore Agreement's confidentiality and nondisclosure provision prohibited Chalam from "disclos[ing] or us[ing] for the benefit of Physician or any other person or entity other than Corporation any Confidential Information of Corporation." (Chalam MSJ, Ex. B, § 6.5.) The provision further stated that "Physician shall not duplicate or make use of any such Confidential Information other than in pursuit of the Corporation's activities." (Id.)

Chalam contends that no reasonable jury could find that he violated this provision. (Chalam MSJ Resp. Br. 21–23.) Although Moore Eye Care makes only general assertions that Chalam was aware of "confidential information" and that this somehow figured into his negotiations with LLU and his "hardball" efforts to amend the Moore Agreement (id.), there may

---

[2] Although the Court is not deciding or evaluating the evidence, it appears clear from Defendant's own evidence that he was "playing both ends against the middle" in his discussions with Moore Eye Care and LLU. The Court has no opinion how a jury will react to these facts.

be facts that could support Moore Eye Care's allegations. The Court will deny summary judgment on this sub-claim.

### v. Best Efforts Provision

The Moore Agreement contained a provision requiring Chalam to "use his best efforts during the term hereof and thereafter to integrate the residence programs of PCOM, Crozer and Drexel and to have Corporation as an integral part of such program." (Chalam MSJ, Ex. B, § 6.4.) Moore Eye Care frames Chalam's failure to carry out this integration as a breach of contract. (Chalam MSJ Resp Br. 20–21.) Chalam argues that he could not have breached the best efforts provision because the referenced "term hereof" never commenced. Chalam therefore requests that the Court grant summary judgment in his favor on this sub-claim. (Chalam MSJ Br. 18–19.)

As will be discussed further, there is a genuine dispute of fact as to whether the term of Chalam's employment with Moore Eye Care ever commenced. If a reasonable jury were to find that Chalam's employment did commence, the jury might also find that Chalam's subsequent abandonment of the integration efforts discussed in the best efforts provision was a breach of contract. For these reasons, the Court will deny summary judgment on this sub-claim.

### b. Liquidated Damages

Section 3.2 of the Moore Agreement provided that "should Physician terminate this Agreement prior to the expiration of the Initial Term or without the notice required . . . Physician shall pay to Corporation liquidated damages in an amount equal to the greater of (x) 1.5 times the annual compensation paid by Corporation to Physician . . . or (y) Six Hundred Thousand Dollars ($600,000), whichever is greater." (Chalam MSJ, Ex. B, § 3.2.) The provision further stated that the "Commencement Date [of Chalam's employment] will not occur until after Physician has been

credentialed as provided in Section 1.1, so that no liquidated damages will be payable as a result of a delay or failure to become credentialed." (Id.)

Moore Eye Care and Chalam both seek summary judgment on the question of whether Moore Eye Care is entitled to liquidated damages. Moore Eye Care argues that Chalam indisputably terminated the Moore Agreement well before the expiration of the initial term, which extended until July 31, 2021, and must pay $600,000 in liquidated damages. (Moore MSJ Br. 10–11.) Chalam argues that his employment under the Moore Agreement never commenced because he failed to obtain credentials that were conditions precedent to the agreement, thus excusing him from paying liquidated damages. (Chalam MSJ Br. 7.)

### i. Satisfaction of Conditions Precedent

Chalam's argument rests on his failure, while undergoing the credentialing process for Moore Eye Care, to obtain staff privileges at Phoenixville Hospital. Chalam contends that a third party, the Educational Commission for Foreign Medical Graduates, was slow in supplying Phoenixville Hospital with information necessary for Chalam to obtain staff privileges. This resulted in Phoenixville Hospital notifying Chalam that his application was being withdrawn, preventing him from gaining credentials required by the Moore Agreement. Moore Eye Care then offered to waive this condition precedent, preparing a draft amendment to the Moore Agreement to this effect. The amendment, however, was never executed and never became a part of the Moore Agreement. (Id. at 7–9.)

In response, Moore Eye Care asserts that Chalam deliberately frustrated and denied his attempt to obtain staff privileges at Phoenixville Hospital. Moore Eye Care states that Chalam misrepresented information in his application and failed to respond to requests for information and documentation, leading to his application being withdrawn. Because Chalam intentionally

prevented this condition precedent from being met, submits Moore Eye Care, Chalam cannot now use this as justification to excuse his own nonperformance under the Moore Agreement. (Chalam MSJ Resp Br. 4–8.) See Connelly Constr. Corp. v. Travelers Cas. & Sur. Co. of Am., No. CV 16-555, 2018 WL 3549281, at *4 (E.D. Pa. July 24, 2018) ("As a general rule, when one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure." (quoting Apalucci v. Agora Syndicate, Inc., 145 F.3d 630, 634 (3d Cir. 1998))).

Moore Eye Care alternatively contends that Moore Eye Care and Chalam agreed to waive the condition precedent that Chalam acquire staff privileges at Phoenixville Hospital. (Chalam MSJ Resp. Br. 10–13.) In support of this contention, Moore Eye Care cites, among other things, an email written by Moore Eye Care's counsel, Debra Gruenstein, and sent to Chalam and Ginsburg in August 2017. (Chalam MSJ Resp., Ex 6.) In the email, Gruenstein indicated that Moore Eye Care was amenable to a waiver. These discussions appear to relate to the same draft amendment mentioned by Chalam, which he asserts was never finalized and never took effect.

### ii. November 2017 Work at Moore Eye Care

Regardless of whether the Moore Agreement was conditioned on Chalam obtaining staff privileges at Phoenixville Hospital—and regardless of why he was unable to obtain those credentials—Moore Eye Care argues that Chalam commenced his employment with Moore Eye Care in November 2017. (Chalam MSJ Resp. Br. 2–4.)

It is undisputed that Chalam treated Moore Eye Care patients in November 2017. However, the parties characterize Chalam's work during this time very differently. Moore Eye Care avers that Chalam agreed to begin working for Moore Eye Care on November 1, 2017, and that Chalam's services for Moore Eye Care that month signaled the commencement of his

employment under the Moore Agreement.  (Id.)  Moore Eye Care cites deposition testimony by Ginsburg to this effect.  (Chalam MSJ Resp., Ex. 4, Ginsburg Dep. 310–11.)

By contrast, Chalam frames his services for Moore Eye Care in November 2017 as merely volunteer work rather than the commencement of his employment.  Chalam cites an email to Ginsburg in which he expressly stated that his work with Moore Eye Care in November would be "locum without compensation and not regular employment."  (Moore MSJ Resp., Ex. Q.)

Whether Moore Eye Care is entitled to liquidated damages hinges on whether the Moore Agreement commenced, and determining this will require a jury resolving genuine disputes of material fact.  There are genuine disputes as to whether Chalam deliberately frustrated his application process at Phoenixville Hospital, whether Chalam and Moore Eye Care waived the Phoenixville Hospital staff privileges requirement, and whether Chalam's work with Moore Eye Care in November 2017 signaled the commencement of the Moore Agreement.  The Court will therefore deny summary judgment to both parties on the issue of liquidated damages.

**V.     Conclusion**

For the foregoing reasons, the Court will deny both Motions.  An appropriate Order follows.

Aside from the legal contentions, this case reflects an obvious lingering dispute between the parties that is doubtfully best resolved by a jury trial before lay persons in a public courtroom.  The Court strongly suggests that the parties consider arbitration or binding mediation to resolve these disputes in a private setting.  Nonetheless, in the absence of such an alternative dispute agreement, the case will proceed to trial promptly, with time limits for the presentation of evidence.